**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRYANT WALKER,** *on his own* | : | **CIVIL ACTION** |
| ***behalf and on behalf of other similarly*** | : | |
| ***situated persons*** | : | **NO. 21-5381** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CMG MORTGAGE, INC.,** *et al.* | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    NOVEMBER 21, 2023

# MEMORANDUM OPINION

## INTRODUCTION

Defendants in this civil action are CMG Mortgage, Inc.,[1] and Cenlar, FSB ("Cenlar"). Specifically, Plaintiff Bryant Walker ("Plaintiff"), on his own behalf and on behalf of other similarly situated persons, asserts claims against Cenlar for alleged violation of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.* [ECF 13].  Discovery ensued and was completed.

Before this Court is Cenlar's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure ("Rule") 56, [ECF 60], and Plaintiff's response in opposition.[2] [ECF 73].  The issues raised by the parties have been fully briefed and are ripe for disposition.  For the reasons set forth, Cenlar's motion is granted, and judgment is entered in favor of Cenlar and against Plaintiff.

---

[1]      Plaintiff's claims against Defendant CMG Mortgage, Inc. are premised under the Real Estate Settlement Procedure Act ("RESPA").  CMG has also moved for summary judgment.  [ECF 62].  CMG's motion is addressed by separate Order.  [*See* ECF 83]

[2]      This Court has also considered Cenlar's reply.  [ECF 75].

**BACKGROUND**

In the asserted claims under the FDCPA, Plaintiff alleges that Cenlar violated various provisions of the statute by, *inter alia*, "using false, deceptive, misleading, harassing, and abusive practices in connection with [its] attempt to collect on alleged consumer debt." (Am. Compl., ECF 13, at ¶ 1). When ruling on a motion for summary judgment, a court must consider record evidence and supported relevant facts in the light most favorable to the non-movant; here, Plaintiff. *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 255 (1986); *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). The facts relevant to this motion are summarized as follows:

In January 2019, Plaintiff purchased a home in Folcroft, Pennsylvania, a borough of Delaware County, with a Federal Housing Administration (FHA) loan from Austin Capital Bank. In November 2019, Plaintiff refinanced the loan with Success Mortgage Partners, Inc.[3] In January 2021, CMG purchased Plaintiff's loan and its servicing rights.

According to the terms and conditions of the mortgage securing the loan, Plaintiff was required to make monthly payments of the principal, interest, and escrow payments to the owner of the loan. The escrow portion of the monthly payments was for real estate property taxes and insurance owed which were to be paid by the lender. The mortgage document provided the following information with respect to default:

22. Grounds for Acceleration of Debt

(a) Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(*See* Pl's. Opp., ECF 73-2, at p. 122).

---

[3]     Cenlar incorrectly contends that Plaintiff refinanced the loan in November 2021 with Success Mortgage Partners, Inc. However, the evidence Cenlar points to clearly shows that the loan was refinanced in November 2019. (Def's. Mot., ECF 60-1, at p. 2–3 (citing ECF 60-6 Ex. D)).

Plaintiff's 2021 real estate taxes for Delaware County were due on or before June 1, 2021. Though Plaintiff made his monthly loan payments on time, *CMG*, as the owner of the loan, failed to timely pay Plaintiff's 2021 real estate taxes by June 1, 2021, when they were due, and as required by the mortgage. Plaintiff contends that he paid the late county real estate taxes on July 20, 2021.[4]

In June 2021, CMG transferred the servicing rights on Plaintiff's loan to Cenlar. By letter dated June 22, 2021, Plaintiff was notified that the servicing of his loan had been transferred to Cenlar effective June 21, 2021. The letter appeared to be from CMG Financial, a Division of CMG Mortgage, Inc. However, it is undisputed that this letter (and every letter that followed) was sent by Cenlar, not CMG.

On June 22, 2021, Cenlar sent Plaintiff two delinquency letters indicating that Plaintiff was behind on his mortgage payments and that Cenlar was a "debt collector."[5] Neither of these two letters expressly indicated that Plaintiff was in default. Though the parties agree that Plaintiff was not in default, Cenlar sent Plaintiff a "NOTICE OF INTENTION TO FORCLOSE MORTGAGE" dated June 25, 2021, that referred to Plaintiff's "default," and a letter dated July 9, 2021, indicating that Plaintiff's loan was "in default." Both communications represented that the letters were "FROM A DEBT COLLECTOR." On June 28, 2021, July 19, 2021, and August 17, 2021, Cenlar sent Plaintiff multiple loan statements, which reflected that Plaintiff's payments were overdue. Notably, none of these monthly statements indicated what the entire outstanding principal on the loan was.

By letter dated July 20, 2021, Plaintiff disputed Cenlar's assessment of six payments "as due and owing on the loan" and claimed that he had "made all [of his] payments on time[,]" attaching a transaction history of the loan as well as a copy of his bank statements. Plaintiff also asserted that as a result of Cenlar/CMG "report[ing] to the credit bureaus that [his] account ha[d] been 30 days late for each month since November 2020[,]" his credit had been damaged.

On August 9, 2021, Cenlar sent Plaintiff a payoff statement for his loan. By letter dated August 27, 2021, Cenlar responded to Plaintiff's July 20, 2021 letter

---

[4] Cenlar disputes that Plaintiff paid these untimely real estate taxes himself and contends that it (Cenlar) submitted payment for the untimely taxes on July 12, 2021, and that the payment was received by the county on July 20, 2021. This dispute, however, is immaterial to this Court's decision. What is material is the fact that the real estate taxes were due on June 1, 2021, and were not paid until sometime after July 1, 2021.

[5] Cenlar claims that "[a]t some point during the 'boarding' process[, . . .] Cenlar was misinformed that the due date of [Plaintiff's] loan was January 1, 2021[,] instead of June 1, 2021." (Def's. Mot., ECF 60-1, at p. 8). According to Cenlar, "[t]he six-month miscalculation occurred in spite of measures taken by Cenlar to ensure loan information is correct, including an automated review of [Plaintiff's] loan materials and a separate physical review of the loan files." (*Id.*). Plaintiff claims that Cenlar's "data was corrupted and prone to systematic error." (Pl's. SUMF, ECF 74, at p. 6). These facts also are not material to this Court's opinion.

that Plaintiff's "account [had] not been reported as delinquent to the credit reporting agencies."  This letter indicated it was "FROM A DEBT COLLECTOR."

By letter dated September 1, 2021, Cenlar again responded to Plaintiff's July 20, 2021 letter, explaining that, on August 23, 2021, Cenlar "completed the correction of the due date of [Plaintiff's] loan."  Cenlar further explained that "[a]t the time [Plaintiff's] loan boarded, it was due for the June 2021 installment [but that] . . . due to an internal error, the due date was incorrectly entered as February 1, 2021."  On September 29, 2021, Cenlar sent Plaintiff a letter addressing Plaintiff's hazard insurance again representing that "[t]his communication is from a debt collector."

**LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 56 governs summary judgment motion practice. Fed. R. Civ. P. 56.  Specifically, this rule provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  Under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena*, 638 F.3d at 196.

Pursuant to Rule 56, the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden can be met by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case."  *Id.* at 322.  After the moving party has met its initial burden, summary judgment is appropriate if the nonmoving party fails to rebut the moving party's claim by "citing to particular part of materials in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A)–(B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not rely on "bare assertions, compulsory allegations or suspicions," *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex Corp.*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.*

## DISCUSSION

Cenlar moves for summary judgment on Plaintiff's claims on the basis that, *inter alia*, Cenlar is not a debt collector as defined by the FDCPA. Plaintiff disagrees.

"Congress enacted the FDCPA in 1977 after noting the 'abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(a)). "At the time the [FDCPA] was being considered, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.'" *Id.* (quoting 15 U.S.C. § 1692(a)). Generally, the FDCPA provides a private cause of action to protect against abusive practices by debt collectors. 15 U.S.C. § 1692(e).

"To prevail on an FDCPA claim, a plaintiff must prove that: (1) [the plaintiff] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves

an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021); *see also Jensen v. Pressler & Pressler*, 971 F.3d 413, 417 (3d Cir. 2015). Here, as noted, the parties dispute the second prong, whether Defendant is a debt collector.

The FDCPA defines the term "debt collector" as "any person . . . who **regularly** collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).[6] "The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Berolotti*, 374 F.3d 56, 60 (2d Cir. 2004); *see also Moyer*, 991 F.3d at 470.

In addressing whether a defendant met the statutory definition of "debt collector," a panel of the United States Court of Appeals for the Third Circuit (the "Third Circuit") explained that "the first determination must be whether the entity alleged to be engaged in the debt collection activity regularly collects debt . . . ." *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 203 (3d Cir. 2012). Though that panel did not itself articulate a test for determining whether an entity "regularly" collects debts owed another, another panel of the Third Circuit cited, with approval, the test articulated by both the Second and Tenth Circuits. *See Oppong v. First Union Mortg. Corp.*, 215 F. App'x 114, 119–20 (3d Cir. 2007) (citing *Goldstein*, 374 F.3d at 62–63); *see also James v. Wadas*, 724 F.3d 1312, 1319 (10th Cir. 2013) ("We agree with and adopt the standard set forth by the Second Circuit in *Goldstein*."); *Hoffman v. Wells Fargo Bank, N.A.*, 2019 WL 186093, at *3 (E.D. Pa. Jan. 11, 2019) (adopting *Goldstein* test for regularity). Given the Third

---

[6]     The statute provides an alternative definition, including "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 15 U.S.C.A. § 1692a(6).  Neither party argues that this alternative definition applies.

The statute also provides exceptions to this definition.  Those exceptions that are relevant are discussed.

Circuit panel's adoption of the of the *Goldstein* test in *Oppong*, this Court will consider and apply these factors here.[7]

In *Goldstein*, the Second Circuit outlined the following non-exclusive factors relevant to the "regularity" requirement:

> (1) [T]he absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernible, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

> Facts relating to the role debt collection work plays in the practice as a whole should also be considered to the extent they bear on the question of regularity of debt collection activity (debt collection constituting 1% of the overall work or revenues of a very large entity may, for instance, suggest regularity, whereas such work constituting 1% of an individual lawyer's practice might not). Whether the law practice seeks debt collection business by marketing itself as having debt collection expertise may also be an indicator of the regularity of collection as a part of the practice.

*Goldstein*, 374 F.3d at 62–63.

Here, to meet his burden of establishing that Cenlar "regularly" acts as a debt collector, Plaintiff points **solely** to the statements and letters that Cenlar sent **him** regarding the debt purportedly owed. Notably missing from Plaintiff's proffer is evidence pertaining to (1) the number of debt collection communications that Cenlar issued over the relevant time period, (2)

---

[7]     Though the *Goldstein* test was first enunciated in a case against a law firm alleged to be a debt collector, it has been applied to non-lawyer debt collectors as well. *See, e.g.*, *Oppong*, 215 F. App'x at 119–20; *Cohen v. Ditech Fin. LLC*, 2017 WL 894429, at *2 (S.D.N.Y. Mar. 3, 2017). Because the FDCPA does not provide any distinction between lawyer and non-lawyer debt collectors, this Court finds that these same factors can be applied to an alleged non-lawyer debt collector.

the frequency of those communications, (3) whether Cenlar has any personnel specifically assigned to debt collection activities, (4) whether Cenlar has any systems or contractors in place to facilitate debt collecting activities, or (5) any evidence relating to the role that debt collection plays in Cenlar's overall business. As such, the absence of any evidence regarding these factors weighs against Plaintiff's argument that Cenlar is a debt collector.

As to Plaintiff's reliance on a few communications directed solely to him, this evidence is insufficient to meet his summary judgment burden to show Cenlar regularly acted as a "debt collector." Indeed, in *Siwulec*, a panel of the Third Circuit suggested that "regularly" means conduct that goes beyond that directed solely at the plaintiff. 465 F. App'x at 203. Relying on *Siwulec*, courts have found that a plaintiff fails to meet his or her burden with respect to "regularly" collecting debts where the plaintiff did not allege facts or present evidence beyond those pertaining solely to the defendant's conduct towards the plaintiff. *See, e.g.*, *Raciti v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 13816459, at *4 (D.N.J. May 7, 2020) (finding that plaintiff failed to allege facts sufficient show that the defendant "regularly" collected debts where plaintiff alleged only debt collecting activities with respect to plaintiff); *Coles v. Zucker Goldberg & Ackerman*, 2015 WL 4578479, at *7 (D.N.J. July 29, 2015), *aff'd*, 658 F. App'x 108 (3d Cir. 2016) ("Allegations of communications sent to Plaintiff alone are insufficient to demonstrate that National City is a 'debt collector' because they fail to meet the 'regularity' requirement."). In the absence of any evidence as to the role debt collection played in Cenlar's overall business, Plaintiff cannot meet and has not met his burden to show that Cenlar "regularly" collects debts owed another.

Further, Plaintiff's reliance on the few written communications from Cenlar to him that included a disclaimer about being from a "debt collector" is also insufficient to meet his summary judgment burden. "[T]he mere fact that a loan servicer identifies itself as a debt collector or advises

that it sometimes acts as a debt collector is insufficient to establish that a defendant regularly collects debts for the account of another." *Raciti*, 2020 WL 12816459, at *4; *see also Nwoke v. Countrywide Home Loans, Inc.*, 251 F. App'x 363, 365 (7th Cir. 2007) (holding that defendant's identification of itself as a "debt collector" in a notice to a consumer "has nothing to do with whether [a defendant] is a 'debt collector' for the purposes of the FDCPA"); *Ghaffari v. Wells Fargo Bank, N.A.*, 2014 WL 6606611, at *6–7 (M.D. Pa. Nov. 19, 2014) (holding that defendant's identification of itself in letters as a debt collector was insufficient to make the defendant a debt collector under the FDCPA); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) (finding that "debt collector" language used by defendant in notices to consumer was not relevant to the determination of whether the defendant was a "debt collector" under the FDCPA); *Hooks v. Forman Holt Eliades & Ravin LLC*, 2015 WL 5333513, at *12 (holding that such disclaimers do not "automatically transform[] a person into a debt collector for purposes of the FDCPA"). Similarly, the fact that Cenlar sent Plaintiff written communications containing language identifying itself as a "debt collector" is insufficient to meet Plaintiff's summary judgment burden.

For the reasons set forth above, Plaintiff has failed to present evidence sufficient for a fact finder to conclude that Cenlar "regularly" engages in debt collecting activities. In the absence of evidence beyond the communications directed solely at him, Plaintiff has not met his summary judgment burden with respect to whether Cenlar qualifies as a "debt collector" under the FDCPA.

### Default Exception

Cenlar also argues that the undisputed evidence shows that Cenlar falls within an express exception to the FDCPA's definition of "debt collector." Specifically, Cenlar argues that provisions of the FDCPA excludes entities that obtain the servicing rights to the loan in question

when the loan was not in default (the "Default Exception"). In response, Plaintiff contends that his loan was either in default or treated by Cenlar as if in default at the time Cenlar obtained the servicing rights. Plaintiff is, however, mistaken.

Under the FDCPA, the term "debt collector" expressly does not include:

> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person, [hereinafter, the "Default Exception"].

15 U.S.C. § 1692a(6)(F)(iii).

Though Plaintiff has maintained throughout this litigation that *he was never* actually in default on his loan, which Cenlar does not dispute, Plaintiff argues that his loan *was* in default for purposes of the Default Exception because Cenlar treated him as though he was in default. In support, Plaintiff relies on the Seventh Circuit's decision in *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534 (7th Cir. 2003). In *Schlosser*, the United States Court of Appeals for the Seventh Circuit held that an entity that acquired ownership of a loan on the mistaken belief that the loan was in default and then sought to collect the debt on that mistaken belief was not excluded from the definition of "debt collector" under the Default Exception. *Id.* at 537–38. Notably, the Third Circuit has never adopted *Schlosser*'s reasoning and this Court finds no reason to do so.

As noted, CMG transferred the servicing rights to Cenlar on June 21, 2021. As evidence that Cenlar incorrectly treated Plaintiff's loan as in default, Plaintiff points to the two delinquency letters that Cenlar sent him on June 22, 2021. Neither of these two letters, however, expressly indicated that Plaintiff was in default. Regardless, the letters were not sent to Plaintiff until ***after*** the servicing rights had been transferred to Cenlar. The first indication that Cenlar was treating Plaintiff's loan as being in "default" appears in Cenlar's June 25, 2021 "NOTICE OF INTENTION TO FORCLOSE MORTGAGE." Cenlar sent that "default" notice ***after*** it acquired the servicing

rights to Plaintiff's loan.  None of these communications, nor any other evidence proffered by Plaintiff, show that Cenlar believed or treated Plaintiff's loan as if in default at the time it obtained the servicing rights from CMG.  In the absence of such evidence, a reasonable fact finder cannot find that Cenlar treated Plaintiff's loan as in default when Cenlar became the servicer.

Though Plaintiff maintains, on the one hand, that his loan was never in default, he also contends, on the other hand, that his loan was technically in default under the governing loan documents because Cenlar (or CMG) failed to timely pay his real estate taxes from his escrow funds.  Under the loan documents, the lender (as opposed to the borrower) was required to pay the borrower's real estate taxes when due from the escrow funds.  (*See* Pl's. Opp., ECF 73-2, at p. 111–12).  With respect to default, the loan documents provide the following:

> 22.  Grounds for Acceleration of Debt
>
> (a) Default.  Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
>
>> (i) ***Borrower*** defaults by failing to pay ***in full any monthly payment*** required by this Security Instrument prior to or on the due date of the next monthly payment, or
>>
>> (ii) ***Borrower*** defaults by failing, ***for a period of thirty days***, to perform any other obligations contained in this Security Instrument.

(*See* Pl's. Opp., ECF 73-2, at p. 122) (emphasis added).  Under the terms of the loan documents, the borrower is deemed in "default" when he fails to make a full monthly payment prior to the date of the next monthly payment or fails "for a period of thirty days" to perform any other obligations.  Thus, under these provisions, Plaintiff was not in default since he made all his monthly mortgage payments were made.

Plaintiff, however, argues that he was *technically* in default because Cenlar/CMG failed to pay his real estate taxes on time.  This argument is misplaced on various grounds.  First, Plaintiff

himself was not required to pay his real estate taxes; rather, the lender was the one required to pay the real estate taxes from the escrow account.  Thus, Plaintiff was not in default on his loan when Cenlar/CMG failed to pay his real estate taxes on time.  Second, even if Plaintiff could be deemed in default because of his lender's failure to pay the real estate taxes on time, this default did not occur until *after* Cenlar acquired the servicing rights.  According to Plaintiff, his real estate taxes were due on June 1, 2021.  Under the terms of the loan documents, failure to pay the June 1, 2021 taxes would not trigger an actual default until thirty days later: *i.e.*, July 1, 2021.  Thus, the earliest date that Plaintiff's loan could be deemed in default on account of the untimely or lack of payment of real estate taxes was July 1, 2021, a date *after* Cenlar acquired the servicing rights to Plaintiff's loan.  As such, Plaintiff's loan was not in default at the time Cenlar acquired the servicing rights.  Accordingly, the Default Exception applies to Cenlar.

**CONCLUSION**

For the reasons set forth, this Court finds that Plaintiff has not his burden of showing that Cenlar is a debt collector under FDCPA.  Accordingly, Cenlar's motion for summary judgment is granted.  An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.